VOLUME SHOE CORP., PLAINTIFF *v*. UNITED STATES, DEFENDANT

Court No. 87–11–01088

(Decided February 15, 1991)

*Thomas J. Kovarcik, Irving A. Mandel,* for plaintiff.
*Stuart M. Gerson,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, (*Bruce N. Stratvert*), Civil Division, United States Department of Justice, for defendant.

OPINION

RESTANI, *Judge*: This case involves classification for tariff purposes of children's athletic shoes. The three entries of merchandise at issue occurred in March, October and November of 1986. Following trial the court set forth its decision. This opinion further memorializes the findings of fact and conclusions of law already stated in open court.

The issue before the court is whether the exterior surfaces of the uppers of the imported shoes were over 90 percent of plastics. If they meet this test plaintiff will prevail in its attempt to achieve a more favorable classification under Tariff Schedules of the United States (TSUS) item 700.5600 (1987).[1] Customs classified the shoes under a higher duty item, item 700.6100, TSUS (1987).[2] The specific factual dispute before the court is whether the uppers of the shoes at issue were vylon and corlon, that is, synthetic nylon and synthetic suede, as plaintiff claims, or whether they were nylon or other woven fabric and corlon, as defendant claims. This is purely a factual matter and the evidence is conflicting.

Although the March 1986 entry papers indicate, at least to some degree, that the entry was of nylon/corlon shoes, plaintiff's chief witness

---

[1] TSUS item 700.5600 reads in pertinent part:
   Footwear * * * which is over 50 percent by weight of * * * plastics * * *
   Having uppers of which over 90 percent of the exterior surface area is * * * plastics * * *
      Other.
[2] TSUS item 700.6100 covers similar footwear which does not meet the 90 percent test.

testified that Volume Shoe never ordered or imported a children's athletic shoe which was nylon/corlon. He also indicated that use of the word "nylon" in the entry papers could be shorthand for synthetic nylon or "vylon." He further testified that the shoe that was the subject of the action contained two types of vylon, a thicker looking vylon on the vamp (front) and a thinner looking vylon on the quarter (side).

A sample from the first entry was examined by Customs. That sample is unavailable,[3] although photocopies of it were introduced into evidence. The photocopies indicate that the March 1986 entry sample contained only one type of nylon or synthetic nylon, rather than the two mentioned by plaintiff's witness. Furthermore, the photocopies show a weave-like pattern, although the photocopy evidence is by no means conclusive evidence that a woven fabric was present on the vamp and quarter. In addition, the photocopies are part of a Customs lab report concluding that the alleged "vylon" section was actually woven fabric.[4]

Plaintiff's chief witness testified, and the documents bear out that Volume Shoe wanted and ordered vylon/corlon shoes with respect to the first entry. *See* Exhibit 2. The court found the witness' testimony credible, but such evidence does not squarely contradict the customs lab report evidence which indicates that Volume Shoe, at least in the March 1986 entry, did not get what it wanted and ordered. Thus, fitting the credible evidence together the court concludes one material was ordered but another delivered. The chief witness changed jobs and may not have been aware of what the court concludes was likely an error by the factory, which was filling a new order. Thus, as Volume Shoe accepted the March 1986 entry it owes the duty on shoes with nylon/corlon uppers, that is, uppers of less than 90 percent plastic exterior surface.

On the other hand, it is apparent from the chief witness's testimony, the testimony of plaintiff's rebuttal witness, several commercial lab reports and a partially dismantled sample that near the time of the second two entries Volume Shoe was importing a vylon/corlon shoe with two types of vylon. Exhibit 1 indicates a reorder, not a new order, was involved and it is less likely a mistake occurred. As no sample or Customs' lab report indicates otherwise the court concludes Volume Shoe got what it wanted and ordered in the late 1986 entries, that is, shoes with vylon/corlon uppers.

Accordingly, the March 1986 entry stands as liquidated. The October and November entries are to be reliquidated under TSUS 700.5600 and duties are to be refunded with interest as provided by law.

---

[3] The sample appears to have been destroyed according to a standard timetable for destruction of samples.

[4] No evidence was introduced as to what Customs actually did to examine the shoes but the photocopies indicate the shoe was dismantled. In such a state a visual examination would appear capable of differentiating a woven fabric from sheet plastic embossed to resemble a weave.